UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY d/b/a AT&T CONNECTICUT | : <br> : <br> : <br> : |
| v. | : <br> : |
| ANTHONY J. PALERMINO, KEVIN M. DELGOBBO, and JOHN W. BETOSKI III, IN THEIR OFFICIAL CAPACITY AS COMMISSIONERS OF THE CONNECTICUT DEPARTMENT OF PUBLIC UTILITY CONTROL | : Civil Action No. 3:09-cv-01787 <br> : (JCH) <br> : <br> : <br> : <br> : <br> : JANUARY 15, 2010 |

## MEMORANDUM IN SUPPORT OF MOTION BY COMCAST, COX AND CABLEVISION TO INTERVENE

Comcast Phone of Connecticut, Inc. ("Comcast"), Cablevision Lightpath – CT, Inc. ("Cablevision") and Cox Connecticut Telcom, LLC ("Cox") (collectively "Petitioners") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 24, to intervene as defendants in the above-captioned action. As demonstrated below, Comcast, Cox and Cablevision satisfy the standard for both intervention as of right and permissive intervention. Therefore, the motion should be granted.

I.      **FACTUAL BACKGROUND**

The Southern New England Telephone Company d/b/a AT&T Connecticut ("AT&T") filed this action seeking a declaratory judgment that a ruling of the Connecticut Department of Public Utility Control ("DPUC") is unlawful. AT&T also seeks an injunction barring enforcement of the DPUC's ruling. Specifically, AT&T challenges enforcement of the DPUC's October 7, 2009 Final Decision in DPUC docket 08-12-04 ("Decision"), in which the DPUC ordered AT&T to reduce the rates that it charges competing carriers for transit traffic service, as described below, in Connecticut.

Petitioners are competitive local exchange carriers ("CLECs") in Connecticut. AT&T is the largest incumbent local exchange carrier ("ILEC") in Connecticut. Both CLECs and ILECs are telecommunications carriers obliged, by 47 U.S.C. § 251a(1), to interconnect, directly or indirectly, with the facilities and equipment of other telecommunications carriers. ILECs are required to provide interconnection services at least equal in quality to those that they provide themselves or their subsidiaries and affiliates. 47 U.S.C. § 251(c)(2)(C) and (D). ILECs are permitted to impose rates for interconnection services on terms and conditions that are just, reasonable and nondiscriminatory. 47 U.S.C. § 251(c)(2)(D); 47 U.S.C. § 252(d).

When one carrier's customer calls a customer served by another CLEC, the calling CLEC must often reach the other CLEC's network by going through the ILEC's telephone network. Unlike other carriers, the ILEC's network is ubiquitous and, unlike CLECs, the ILEC is required to, is able to, and in fact has, interconnected with all other carriers in Connecticut. To illustrate, when a call originated on one CLEC's network (the originating CLEC) is transmitted

to a customer of another CLEC or wireless carrier through AT&T's network, AT&T charges the originating CLEC a transit traffic service charge on a per minute basis. Without AT&T's transit service, there is often no other viable means by which the originating CLEC could complete its customers' calls to customers of other Connecticut CLECs or wireless carriers. Unlike AT&T, CLECs are not required to interconnect with all other carriers in the State. AT&T's transit service is, therefore, paramount to ensuring that all carriers can complete their customers' calls and effectively compete in the voice market in Connecticut.

In its Final Decision, the DPUC reaffirmed its prior determination that transit traffic service provided by AT&T to CLECs in Connecticut constituted interconnection pursuant to 47 U.S.C. § 251(c)(2). Decision at 34-35. The DPUC further ruled that AT&T was required to provide transit traffic service at rates based on total service long run incremental cost ("TSLRIC"). Decision at 1, 39-41; *see also* 47 U.S.C. § 252(d). AT&T challenges those determinations in this action and seeks to be permitted to charge rates for transit traffic services that are higher than the TSLRIC-based rates set by the DPUC.

Petitioners rely on the transit traffic services offered by AT&T to compete in the Connecticut marketplace. If AT&T prevails in this action with respect to the fees, it will raise all the transit traffic rates that it charges all carriers, including Petitioners, beyond those rates that are based on TSLRIC and therefore will charge rates that violate the federal and state law. For that reason, Petitioners all participated in the DPUC's proceeding below and all seek permission to intervene in the current action before this Court.

## II. COMCAST, CABLEVISION AND COX ARE ENTITLED TO INTERVENE AS OF RIGHT

Federal Rule of Civil Procedure 24(a) provides that, on timely motion, the court must permit anyone to intervene who claims an interest relating to the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. The Second Circuit has interpreted this rule to require intervention where each of the following factors are satisfied: (1) the application is timely, (2) the movant has an interest in the action, (3) the movant's interest may be impaired by the disposition of the action, and (4) the parties to the action will not adequately protect the movant's interest. *United States v. Palermino*, 238 F.R.D. 118, 120 (D. Conn. 2006) (JBA). As demonstrated below, Petitioners satisfy every one of these factors, entitling them to intervene in this action as of right.

### A. This Application Is Timely

Analysis of the timeliness of a motion for intervention is highly fact specific. Motions have been found timely where they were filed three months after the complaint, but before any significant substantive motions had been filed. *See Association of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102-03 (D. Conn. 2007). Similarly, motions to intervene have been deemed timely when filed four months after the complaint was filed and after the defendant had filed an answer, but before any significant substantive motions were filed. *Schaghticoke Tribal Nation v. Norton*, 3:06cv81, 2006 U.S. Dist. Lexis 42643, at *25 (D. Conn. June 13, 2006).

4

In this case, the present motion has been filed before any substantive motions have been filed and before the original defendants have answered the Complaint. A motion to intervene recently filed in this case by Metro PCS New York LLC was granted on January 11, 2010. absent objection by any of the original parties to the action. Petitioners' motion is, therefore, timely.

More importantly, in this action, the parties have agreed upon and submitted to the Court a schedule of appellate-style briefing that will present the issues in an efficient manner. Under that schedule, AT&T filed its opening brief on January 6, 2010; the defendants are scheduled to file their responsive brief on February 5, 2010, after which AT&T will file a reply brief to close the briefing. The parties do not anticipate a need for the defendants to file a response to the complaint.

The Petitioners are fully prepared to adhere to the parties' previously adopted schedule and propose to file a brief on the merits on the same date as the current defendants file their brief. Like the original defendants in this action, Petitioners do not envision a need for a response to AT&T's complaint for the Court to fully and fairly adjudicate the parties' rights in the matter. As a result, permitting Petitioners to intervene in this matter will not delay or slow the resolution of this matter.

**B.     Cablevision, Comcast and Cox Have Interests In The Subject of This Case**

For an interest to be cognizable for Rule 24(a) intervention, the interest must be "direct, substantial and legally protectable," rather than "remote [or] contingent on the occurrence of a sequence of events before it becomes colorable." *United States v. Peoples Benefit Life Ins. Co.*,

271 F.3d 411, 415 (2d Cir. 2001). Petitioners all have an interest that is direct, substantial and legally protectable, in that they each purchase transit traffic services from AT&T and rely on AT&T's transit traffic services to compete in the phone service market in Connecticut. The DPUC's ruling in docket 08-12-04, which AT&T challenges in this action, has had the effect of reducing the rates that AT&T has charged Petitioners. If the DPUC's ruling is overturned, AT&T will be free to raise the rates that it charges Petitioners for transit traffic services, directly affecting Petitioners' ability to compete in the Connecticut market. Thus, Petitioners all have a direct and substantial interest in the outcome of this matter.

The DPUC recognized that Petitioners had interests in the subject of the docket being challenged by AT&T in this action. Indeed, Petitioners were all designated by the DPUC as parties in the docket. Decision at 2-3. The DPUC received written comments from all three parties and discussed those comments extensively in its decision on the merits. Decision at 7-8, 15-17.

### C. Disposition Of This Action May Impair The Interests of Cox, Comcast and Cablevision

The third factor for intervention as of right evaluates whether the movant's interest may be impaired by disposition of the action. Here, Petitioners' interests may be impaired by the resolution of the action because the outcome of the matter may affect the rates that AT&T is permitted to charge each of them, and every other CLEC conducting business in Connecticut. Until the DPUC's final decision in docket 08-12-04, AT&T charged Petitioners above TSLRIC rates that were unreasonable. The DPUC's ruling imposed, finally, rational and reasonable

restrictions on the charges that AT&T could exact for these services. If the DPUC's ruling is overturned in this action, the rates that Petitioners will have to pay for transit traffic services would revert to their prior levels which were the highest among all of AT&T's service territories. A return to those rate levels would affect the Petitioners' ability to compete in the Connecticut market. Thus, the disposition of this action may impair their interests.

### D. The Interests of Comcast, Cablevision and Cox Are Not Adequately Protected By The Parties To The Action

The final factor considered under Rule 24(a) is whether the current parties to the action will adequately protect the movant's interests. The burden to show that the representation of their interests by existing parties may be inadequate is generally minimal; however, the Second Circuit had required "a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Schaghticoke Tribal Nation*, 2006 U.S. Dist. Lexis 42643, at *13. In cases involving governmental entities named as defendants, inadequate representation is more likely to be found where the movants "assert[] a personal interest that does not belong to the general public." *Id.* at *18-*19 (quoting *Forest Conserv. Council v. United States Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995)).

Even more specifically, the District Court has granted motions to intervene in cases in which entities have sought to intervene as a co-defendant with the DPUC. *See Palermino*, 238 F.R.D. at 122-23. In *Palermino*, the court, *Arterton, J.*, evaluated whether the DPUC would adequately protect the interests of the Office of Consumer Counsel ("OCC") and the American Civil Liberties Union of Connecticut ("ACLU") and concluded that their interests differed. The

court explained that "while the DPUC is a neutral state-established adjudicative body seeking to clarify the outer boundaries of its authority and to exercise such authority accordingly . . ." the OCC and the ACLU had different missions. *Id.* at 123. Further, the court observed that the defendants, DPUC commissioners sued in their official capacity, "do not represent the interests of private individuals/telecommunications consumers championed by the ACLU-CT and the OCC." *Id.* On that basis, the court determined that the movant's interests would not be adequately protected by the DPUC and granted intervention.

Here, Petitioners would not be adequately protected by the current defendants in the case. The defendants in the action are the three DPUC commissioners that issued the decision that AT&T challenges. AT&T sued these individuals in their official capacities as DPUC commissioners, not as individuals. Although these commissioners represent the DPUC's interests in this action, the objectives of the DPUC and its interest in this action differ from those of the movants. While Petitioners' interests are aligned with the DPUC in that both seek to expand competitive choices in the state by ensuring that AT&T's transit rates are reasonable, as competitive providers, the Petitioners would be directly affected by any rate increase that AT&T would impose. Petitioners therefore each bear direct and substantial risk of higher rates for transit traffic services if the DPUC's ruling is overturned in this action. The DPUC's interest in defending the boundaries of its authority is not similarly direct and substantial as the interests of the Petitioners. *See Palermino*, 238 F.R.D. at 122-23.

Even the DPUC's interest in defending the substantive outcome of its decision is more remote than the interest held by Petitioners. The DPUC has a general interest in defending the

validity of its decisions, and it has a broad interest in the provision of safe, reliable, modern, and fairly-priced utility services in Connecticut. But none of those interests rise to the level of the interests held by the Petitioners, each of which assert a personal interest that does not belong to the general public. *See Schaghticoke Tribal Nation*, 2006 U.S. Dist. Lexis 42643, at *18-*19; 3B Moore's Federal Practice, 24.07[4] at 24-78 (2d ed. 1995).

Further, the history of the DPUC's rulings with respect to transit traffic service issues reveals that the recent ruling in docket 08-12-04 was not the first time that the DPUC addressed and resolved the issues now being challenged by AT&T in this case. The DPUC evaluated these same questions in docket 02-01-03 and concluded then, as it did most recently, that transit traffic services are a form of interconnection subject to the DPUC's jurisdiction that should be priced on a TSLRIC basis. The DPUC entered a stay in that docket, however, when AT&T took an appeal from the decision. AT&T subsequently settled the appeal and the stay in the docket was never lifted. As a result, the DPUC's decision in docket 02-01-03, which would have obviated docket 08-12-04 and AT&T's present challenge, was never implemented. For years that followed, the DPUC did not enforce the decision that it had rendered in docket 02-01-03, permitting AT&T to continue to charge higher rates for transit traffic services to CLECs such as Petitioners. The detrimental outcome of that proceeding on Petitioners further demonstrates that their interests are not uniform with the DPUC and cannot be presumed to be adequately protected by the DPUC's representation in this action. Petitioners should, therefore, be permitted to intervene as of right.

### III. COMCAST, CABLEVISION AND COX SHOULD BE PERMITTED TO INTERVENE

Even if Petitioners are not entitled to intervene as of right, they should be permitted to intervene under Federal Rule of Civil Procedure 24(b). Permissive intervention under Rule 24(b) is available where an applicant's claim and the action "have a question of law or fact in common...." Fed. R. Civ. P. 24(b)(2). Intervention under Rule 24(b) is wholly discretionary with the court. *Association of Conn. Lobbyists LLC*, 241 F.R.D. at 102. "The principal consideration for courts in exercising their discretion is whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties.'" *Id.* (quoting 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1913 at 379 (2d ed. 1986)).

Petitioners assert a claim that has a common question of law and fact with the present case. AT&T contends in this action that the transit traffic service that it provides to CLECs is not "interconnection" as defined by the Telecommunications Act of 1996 ("Telecom Act"). On that basis, AT&T asserts that the DPUC exceeded its authority by regulating the rates that AT&T charges for transit traffic service. Petitioners claim, to the contrary, that AT&T's transit traffic service is "interconnection" under the Telecom Act and that the DPUC properly required that AT&T base its transit traffic service rates on TSLRIC. Thus, the claim asserted by Petitioners is the same question of law presented by the original parties to this action, satisfying the requirements of Rule 24(b) for permissive intervention.

Further, intervention by Petitioners will not delay or prejudice the adjudication of the rights of the original parties to this action. The original parties have adopted, with the Court's

permission, a schedule of appellate-style briefing that will present the issues to the Court efficiently. AT&T filed its opening brief on the merits on January 6. Petitioners are prepared to abide by the schedule adopted by the original parties to the action and approved by the Court. As a result, the Petitioners' intervention will not delay the adjudication of the action. Intervention will also not prejudice the adjudication of the rights of the original parties because Petitioners were all parties to the DPUC's proceedings below and are all fully conversant with the facts and legal issues presented in this case. Petitioners will represent their own interests and those of similarly situated CLECs more effectively than the DPUC. The DPUC can then focus its defense on its core mission of ensuring the provision of safe, reliable, modern, and fairly-priced utility services in Connecticut.

## IV. CONCLUSION

For the foregoing reasons, Comcast, Cox and Cablevision respectfully request that their motion to intervene be granted.

                              COMCAST PHONE OF CONNECTICUT, INC.,
                              COX CONNECTICUT TELCOM, LLC, and
                              CABLEVISION LIGHTPATH – CT, INC.

By:_____/s/_____
                  Bradford S. Babbitt
                  Email: bbabbitt@rc.com
                  John A. Poakeart
                  Email: jpoakeart@rc.com
                  Robinson & Cole LLP
                  280 Trumbull Street
                  Hartford, CT 06103
                  Tel. No.: 860-275-8200
                  Fax No.: 860-462-8299

## **CERTIFICATION OF SERVICE**

I hereby certify that this document was filed electronically on this 15th day of January, 2010. Notice will be sent to all counsel of record through the Court's electronic notification system.

/s/
Bradford S. Babbitt